**In re Reginald GAUDETTE, Debtor.**

**Richard R. Erricola, Trustee, Plaintiff,**

**v.**

**Reginald Gaudette, et al., Defendants.**

**Bankruptcy No. 96–12653–MWV.**
**Adversary No. 98–1125–MWV.**

United States Bankruptcy Court,
D. New Hampshire.

Nov. 2, 1999.

**492**

Geraldine Karonis, Manchester, NH, United States Trustee.

William S. Gannon, Manchester, NH, Thomas Raftery, Carlisle, MA, for plaintiff.

Ralph F. Holmes, Joseph A. Foster, Linda M. Peruzzi, Manchester, NH, for Louise Gaudette, individually and in her representative capacities; OFS Lending, Inc.; Reginald L. Gaudette Family Limited Partnership I; Louise L. Gaudette Family Limited Partnership II; J & L Family Limited Partnership III; Boule-

vard Drive–In, Inc.; The Resource Clinic, Inc.; LLG Services Corporation; and C & G Investments.[1]

Richard R. Erricola, Chapter 7 Trustee.

Robert Daniszewski, for Thomas J. Thomas, Jr., Mark L. Van de Water, Glenn C. Raiche, and Thomas, Utell, Van de Water & Raiche, P.A. ("Law Firm Defendants").

Deborah Barrett, Concord, NH, for the Small Business Administration.

David Carr, for JAAJ Realty.

Ronald J. Caron, Manchester, NH, for Lisa A. Robinson, Lisa A. Robinson as Guardian of Jennifer and Michelle Robinson, Edith M. Gaudette, Lionel H. Gaudette and Jeffrey Gaudette.

Daniel Sklar, Jo Ann J. Brighton, Manchester, NH, for Richard Choate.

Rodney Stark, Cynthia L. Fallon, Manchester, NH, Janine Gawryl, Nashua, NH, for Mark S. Ring, C.P.A. and Wheeler, Ring & Dolan, P.C.

## MEMORANDUM OPINION ON DEFENDANTS' MOTION TO DISMISS COUNTS I AND V

MARK W. VAUGHN, Chief Judge.

The Court has before it a motion to dismiss Count I of the Plaintiff's complaint filed by Thomas J. Thomas Jr., Marc L. Van De Water, Glenn C. Raiche, and Thomas, Utell, Van De Water & Raiche, P.A. ("Law Firm Defendants") and a motion to dismiss Count I and V of Plaintiff's complaint filed by Reginald L. Gaudette, individually, and in his representative capacities; Louise L. Gaudette, individually,

---

1. Document number 31 in the case file does not state that the attorneys appear for Reginald Gaudette, the Debtor. (Please note that the Court will hereinafter refer to Attorney Holmes for these attorneys for convenience purposes.) However, Attorney Holmes did submit, for the Debtor, document number 32 in the case file, a Motion by Debtor and Other Defendants to Dismiss Claims against Office

Financial Service Pension Plan and Gaudette Associates, Inc. Pension Plan. The Court notes that Attorney Holmes has appeared at a number of hearings to represent the Debtor and has stated so on the record; therefore, the Court will not require that Attorney Holmes amend his Appearance to include Reginald Gaudette.

and in her representative capacities;[2] Reginald L. Gaudette Family Limited Partnership I; Louise L. Gaudette Family Limited Partnership II; J & L Family Limited Partnership III; Boulevard Drive–In, Inc.; The Resource Clinic; LLG Services Corporation; and C & G Investments (hereinafter collectively referred to as "Defendants").

Richard Choate has joined in the pending motions to dismiss.[3] Further, Defendants Mark S. Ring, C.P.A. and Wheeler, Ring & Dolan, P.C. have joined in the Defendants' Motion to Dismiss.[4]

For the following reasons, the Court grants the Defendants' motion to dismiss.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### INTRODUCTION

Count I of the Plaintiff's complaint, "Evasion of Tax Liabilities, Concealment of Assets and Liabilities and Common Law Civil Conspiracy," is alleged against:

(i) the Debtor [Reginald Gaudette]; (ii) Louise Gaudette; (iii) Richard V. Choate ("Choate"), (iv) C & G Investments ("C & G"), (v) the Trustees, Plan Administrators, Employers and Plan Sponsors, the Beneficiary of the Pension Plans and all other fiduciaries with respect to such Pension Plans (collectively, "Plan Fiduciaries"), (vi) the general partners of the

Gaudette Family Limited Partnerships and such limited partnerships, (vii) Boulevard Drive–In, Inc. ("BDI"), (viii) Logicon Corporation ("Logicon") (ix) TRC, (x) Thomas, Utell, Van De Water & Raiche and each of their members (collectively, the "Thomas Firm" and singly "Thomas", "Utell", "Van De Water" and "Raiche") (xi) Wheeler, Ring & Dolan and each of its members (collectively, the "Wheeler Firm" and singly "Wheeler", "Ring" and "Dolan") during the period between 1987 and the present (the "Enterprise Term") and (xii) each of the John Doe Defendants named and added to this Count from time to time as discovery progresses (collectively, the "John Doe Defendants").

(Pl.'s Compl. at 8.)[5]

Count V of the Plaintiff's complaint, "Violation of Civil RICO 18 U.S.C. § 1962[,]" is alleged against:

(A) the following persons, as such term is defined in Section 1961(3) collectively, the ("RICO Defendants"): (I) the Debtor; (ii) Louise Gaudette; (iii) the Trustee, Plan Administrators, Employers and Plan Sponsors, the Beneficiary of the Pension Plans and all other fiduciaries with respect to such Pension Plans (collectively "Plan Fiduciaries") during the period between 1987 and the present (the "Enterprise Term") including, without limitation, the Debtor, Louise Gaudette, LLG Services and OFS Lending and the persons in control of them (iv) Gaudette Family Limited Partnership II and its general partners, OFSPP and Louise Gaudette and (vi) each of the John Doe Defendants named and added

2. An involuntary petition, number 99–12847, was filed against Louise Gaudette on September 9, 1999. A hearing on that involuntary petition is scheduled for November 5, 1999.

3. Document number 56 in the case file is Richard Choate's joinder motion and document number 69 is the Court's order granting the motion.

4. Document numbers 57 and 58 in the case file are Mark S. Ring's and his firm's motions

to join both the Law Firm Defendants' and the Debtor's motions to dismiss. A review of the voluminous record indicates no order has been entered on the motions and, for that reason, a separate order granting the motions has been issued today.

5. Count I of the Plaintiff's complaint ends at paragraph 144 on page 34.

to this Count from time to time as discovery progresses (collectively, the "John Doe Defendants").

(Pl.'s Compl. at 63.)

The Law Firm Defendants' Motion to Dismiss requests that the Court "enter an order dismissing each of the Law Firm Defendants as a defendant in this action" for the following reasons:

1. Since Reginald Gaudette could not have brought a civil conspiracy action against himself under the New Hampshire doctrine of *in pari delicto*, the Trustee has no standing to bring these claims as he succeeds to the Debtor's property under section 541 of the Bankruptcy Code.

2. The Trustee's civil conspiracy claim does not allege an underlying tort in which the Law Firm Defendants are alleged to have participated and therefore fails as a matter of New Hampshire law.

3. Any claims against Attorney Raiche individually should be dismissed for failure to allege any facts indicating his involvement in the conspiracy.

4. Any allegations of breaches of duties owed to the R & R Associates of Hampton bankruptcy[6] estate be stricken from the complaint since they are irrelevant to this action.

(Law Firm Defs.' Mot. to Dismiss at 1–2.)[7] The Plaintiff Trustee filed an objection to the Law Firm Defendants' Motion to Dismiss which asserts the following:

1. The *in pari delicto* defense cannot be used against a New Hampshire

6. The R & R Associates of Hampton bankruptcy case number is 91–10983–MWV.

7. This motion is document number 26 in the case file. Document number 28 is the "Memorandum of Law in Support of Law Firm Defendants' Motion to Dismiss" ("Law Firm Defendants' Memorandum of Law").

8. The Plaintiff's objection is document number 40 in the case file. Document number 41 is the Memorandum of Law in Support of

bankruptcy trustee as a matter of law.

2. The Plaintiff did not raise the statute of limitations issue in a motion but in a memorandum of law, so it is not properly before the Court. Further, because the statute of limitations issue is a question of fact, the Court may not dismiss Counts I and V on the grounds of whether the statute of limitations has run.

3. No underlying tort is required to plead a civil conspiracy claim under New Hampshire law; however, if one is required, the Plaintiff accurately pleaded one or should be allowed to amend his complaint.

4. The Court should not dismiss the claims against Attorney Raiche because not all facts are known.

5. The allegations concerning the R & R Associates of Hampton bankruptcy should not be stricken because the allegations are relevant to this matter and 12(f) motions are disfavored, particularly when they relate to relevancy.

(Pl.'s Obj. to Law Firm Defs.' Mot. to Dismiss at 1–2.)[8]

In addition to the Law Firm Defendants' Motion to Dismiss, the Debtor and the other Defendants, represented by Attorney Holmes, have also moved to dismiss Counts I and V on the following grounds, many of which are similar to those articulated in the Law Firm Defendants' motion:

a. The Trustee has no legal authority or standing to assert these claims.

b. Count I is barred by the doctrine of *in pari delicto*.[9]

Plaintiff's Objection to Law Firm Defendants' Motion to Dismiss. Document number 47 is a Supplemental Memorandum of Law in Support of Plaintiff's Objection to Law Firm Defendants' Motion to Dismiss ("Plaintiff's Supplemental Memorandum").

9. Black's Law Dictionary defines *in pari delicto* to mean "[i]n equal fault; equally culpable or criminal; in a case of equal fault or guilt...." BLACK'S LAW DICTIONARY 791 (6th ed.1990).

c. Count I fails to state a proper cause of action.

d. Both claims are barred by the statute of limitations.

e. Both claims are prohibited by the automatic stay.

(Debtor's Motion to Dismiss Counts I and V at 1.)[10] Attorney Holmes amended this motion by filing an Amended Motion to Dismiss Counts I and V.[11] The Amended Motion, however, asserts the same bases as mentioned above in "a" through "e." In addition to his objection to the Law Firm Defendants' Motion to Dismiss, the Plaintiff has objected to the Debtor's Motion to Dismiss Counts I and V, of which the pertinent parts the Court quotes verbatim:

1. Taking the facts as pleaded by the Plaintiff as true, Counts I and V state a cognizable cause of action.

2. The Trustee has standing to bring the suit, and the action is timely filed.

3. No underlying tort is required by New Hampshire law to sustain an action for civil conspiracy, and because there is no danger that the estate will be dismembered by creditors in other forums, the automatic stay does not preclude the Complaint.

(Pl.'s Obj. to the Mot. to Dismiss Counts I and V by the Debtor and Other Defs. at 1–2.)[12]

Through previously filed motions and hearings in both this adversary proceeding and in adversary proceeding number 97–1096–MWV,[13] the Court has dismissed all claims in this adversary proceeding against the Defendants Office and Financial Service Pension Plan ("OFSPP") and Gaudette Associates Pension Plan and Trust ("GAPPT") (collectively referred to as the "Pension Plan Defendants"). Therefore, the Pension Plan Defendants are not listed under the Appearances section for Attorney Holmes in this opinion.

## DISCUSSION

### I. Standard of Review.

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint must "set forth factual allegations, either direct or inferential, respecting each material ele-

---

**10.** This motion is document number 35 in the case file. Document number 36 is the Memorandum in Support of Motion by Debtor and Other Defendants to Dismiss Counts I and V ("Debtor's Memorandum of Law").

**11.** This Amended Motion to Dismiss Counts I and V is document number 43 in the case file. Document number 44 is the Amended Memorandum in Support of Motion to Dismiss Counts I and V ("Debtor's Amended Memorandum of Law"). Finally, document number 73 is the Debtor's Post–Hearing Supplemental Memorandum in Support of Motion to Dismiss Counts I and V ("Debtor's Second Amended Memorandum of Law").

**12.** This objection is document number 52 in the case file. Document number 53 in the file is the Plaintiff's Memorandum of Law in Support of the Objection to the Motion to Dismiss Counts I and V by the Debtor and Other Defendants ("Plaintiff's Memorandum of Law in Objection to the Debtor's Motion to Dismiss"). Document number 63 is the Supple-

ment to the Trustee's Memorandum of Law in Support of His Objection to the Motion to Dismiss Counts I and V by the Debtor and Other Defendants ("Plaintiff's Supplemental Memorandum of Law in Objection to the Debtor's Motion to Dismiss"). Finally, document number 72 is the Trustee's Post–Hearing Supplemental Memorandum on Standing Issue to Trustee's Memorandum of Law in Support of his Objection to the Motion to Dismiss Counts I and V by the Debtor and Other Defendants ("Plaintiff's Second Supplemental Memorandum").

**13.** The citation to adversary proceeding number 97–1096–MWV, which may be found on the Court's web site at <<www.nhb.uscourts.gov>>, is Erricola v. Gaudette (In re Gaudette), 240 B.R. 649 (Bankr.D.N.H.1999). On July 19, 1999, the Court denied the Plaintiff's motion to reconsider its order dismissing Count II of the Plaintiff's complaint in this adversary proceeding as against the Pension Plan Defendants. This matter was appealed to the District Court, but was withdrawn on July 20, 1999.

ment necessary to sustain recovery." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988); *see also Cooperman v. Individual, Inc.,* 171 F.3d 43, 46 (1st Cir. 1999) ("We accept as true all well[ ]pleaded allegations and give plaintiffs the benefit of all reasonable inferences.") (internal citations and quotations omitted); *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990) ("In reviewing a Rule 12(b)(6) dismissal, we take the well[ ]pleaded facts as they appear in the complaint, indulging every reasonable inference in plaintiff's favor."); *Gilbert v. Essex Group, Inc.,* 930 F.Supp. 683, 686 (D.N.H.1993) ("A motion to dismiss under FED.R.CIV.P. 12(b)(6) is one of limited inquiry, focusing not on 'whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' ") (*citing Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

## II. *Whether the Plaintiff Has Standing to Assert Counts I and V.*

■ The Trustee alleges that Reginald Gaudette, who is the Debtor, and the other Defendants acted in concert to conspire to hide assets that would otherwise be included in the bankruptcy estate. As stated above, Count I alleges a civil conspiracy charge, and Count V alleges a RICO conspiracy charge.

### A. *Count I: Civil Conspiracy Charge.*

■ "A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means," *Jay Edwards, Inc. v. Baker,* 130 N.H. 41, 534 A.2d 706 (1987) (*quoting* 15A C.J.S. CONSPIRACY § 1(1), at 596 (1967)).

### B. *Property of the Estate Defined.*

Section 541(a) of the Bankruptcy Code, "Property of the estate[,]", states that:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is com-

prised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsection (b) and (c)(2) of this section, all legal or equitable interests *of the debtor in property as of the commencement of the case.*

(2) All interests *of the debtor and the debtor's spouse* in community property as of the commencement of the case that is—

(A) under the sole, equal or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

(3) Any interest in *property that the trustee recovers* under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

(5) Any interest in property that would have been property of the estate if such interest had been an interest *of the debtor* on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(A) by bequest, devise, or inheritance;

(B) as a result of a property settlement agreement with debtor's spouse, or of an interlocutory or final divorce decree; or

(C) as beneficiary of a life insurance policy or of a death benefit plan.

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earning from services performed by an indi-

vidual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case.

11 U.S.C.A. § 541 (West 1988) (emphasis added).

C. *The Trustee's Statutory Powers.*

▮ Section 323 of the Bankruptcy Code states:

(a) The trustee in a case under this title is the representative of the estate.

(b) The trustee in a case under this title has capacity to sue and be sued.

11 U.S.C.A. § 323 (West 1988). Under section 323 of the Bankruptcy Code, the trustee succeeds to a debtor's rights as he or she becomes the estate's representative and may sue or be sued. *Id.* As "estate" is a term of art in bankruptcy law, a trustee is the representative of the "property of the estate" under section 541 of the Bankruptcy Code. Although *Collier on Bankruptcy* states that a trustee "represents all the creditors of the estate generally[,]" 3 COLLIER ON BANKRUPTCY, ¶ 323.02[1] (15th ed. rev.1998), this power to represent the estate is not limitless. Thus, lawsuits that a trustee may bring

> fall into two categories: (1) those brought by the trustee as successor to the debtor's interest in the estate under section 541, and (2) those brought under one or more of the trustee's avoiding powers. With respect to the former, the trustee stands in the shoes of the debtor and can only assert those causes of action possessed by the debtor. The trustee is, of course, subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor.

3 COLLIER ON BANKRUPTCY, ¶ 323.03[2] (15th ed. rev.1998). *See also Barber v. First Nat'l Bank of Chillicothe (In re Ostrom–Martin, Inc.)*, 202 B.R. 267, 272 (Bankr. C.D.Ill.1996) ("[T]he trustee stands in the shoes of the debtor and may only institute whatever actions the debtor could have

brought itself and is subject to the same defenses as could have been asserted by the defendant had the action been brought by the debtor.") (*citing Yale II Mining Assocs. v. Gilliam*, 586 F.Supp. 893 (W.D.Va.1984), and *Eisenberg v. Feiner (In re Ahead by a Length, Inc.)*, 100 B.R. 157 (Bankr.S.D.N.Y.1989)). Thus, having "stepped into the shoes" of the Debtor, the a trustee may prosecute whatever claims a debtor possessed as of the filing date of the petition. The bankruptcy trustee has exclusive standing to assert the estate's legal claims. *See In re Spenlinhauer*, 231 B.R. 429, 435 (D.Me.1999) (Haines, J.) (*citing Mitchell Excavators, Inc. v. Mitchell*, 734 F.2d 129, 131 (2d Cir.1984)).

As the above-captioned case was filed under Chapter 7 of the Bankruptcy Code, section 704 mandates the Plaintiff's duties. Specifically, section 704 states that a trustee, whose principal duty is to collect and reduce to money the property of the estate, *Edmonston v. Murphy (In re Edmonston)*, 107 F.3d 74, 76 (1st Cir.1997), shall perform the following:

(1) collect and reduce to money the property of the estate . . ., and close such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

(3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title;

(4) investigate the financial affairs of the debtor;

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

(6) if advisable, oppose the discharge of the debtor;

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

(8) if the business of the debtor is authorized to be operated, file ... periodic reports ...; and

(9) make a final report and file a final account. ...

11 U.S.C.A. § 704 (West 1988). *See also* FED.R.BANKR.P. 6009 ("[T]he trustee ... may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal."). Bankruptcy Rule 6009, however, does not create or expand whatever rights the Bankruptcy Code confers on a trustee. *See, e.g., Parker v. Bain,* 68 F.3d 1131, 1136 (9th Cir.1995) ("Rule 6009 does not authorize proceedings that section 362 would otherwise bar...."); *Whitaker v. Power Brake Supply, Inc. (In re Olympia Holding Corp.),* 188 B.R. 287, 295 (M.D.Fla.1994), *aff'd,* 68 F.3d 1304 (11th Cir.1995) (*"In re Olympia Holding Corp."*).

Furthermore, "[a]lthough § 541 includes choses in action and claims by the debtor against others, the legislative history indicates that it was not intended to expand the debtor's rights against others more than they exist at the commencement of the case." *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1154 (3d Cir.1989) (*citing* 3 COLLIER ON BANKRUPTCY, ¶ 323.02[1] (15th ed. rev. 1998)); *see also In re Olympia Holding Corp.,* 188 B.R. at 295 ("The trustee in bankruptcy has the same rights in the property as the debtor, no more and no less.") (*citing In re Thomas,* 883 F.2d 991, 995 (11th Cir.1989)).

D. *Application of Sections 323 and 541 as to Whether the Plaintiff Has Standing to Bring Counts I and V of the Complaint.*

Applying these principles to the present case, the Defendants acknowledge that the Plaintiff is the proper party to bring suit on any civil claim that may have accrued in favor of the Debtor prior to, and as of, the petition date. However, Counts I and V assert causes of action *against the Debtor* and other Defendants under theories of conspiracy. The Counts allege a complicated series of transactions in which the Defendants engaged to conspire to hide assets from the estate's creditors.

Essential to the Trustee's conspiracy theories is the allegation that the Debtor, a named Defendant, was a co-conspirator. The Law Firm Defendants maintain that where the Debtor has no claim for civil conspiracy against the Defendants, neither does the Plaintiff, and that under the doctrine of *in pari delicto* the Trustee had no standing to commence this action. The Court agrees.

1. *Standing to Sue for Conspiracy.*

In *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), the Supreme Court determined that a trustee in bankruptcy could not maintain an action against a third party that could not have been maintained by the debtor. More specifically stated, if the cause of action belongs to the estate, the trustee has exclusive standing to assert it; conversely, if the cause of action belongs solely to the creditors, the trustee has no standing to assert it. *See Schertz–Cibolo–Universal City, Indep. Sch. Dist. v. Wright (In re Educators Group Health Trust),* 25 F.3d 1281, 1284 (5th Cir.1994); *accord The Mediators, Inc. v. Manney (In re The Mediators, Inc.),* 105 F.3d 822, 825–26 (2nd Cir.1997) ("[T]he Mediators has no standing to assert aiding-and-abetting claims against third parties for cooperating in the very misconduct that it had initiated....[A] bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself....Were the law otherwise, the debtor's assets would be depleted to enforce rights possessed by third parties and defendants would face the danger of duplicative recoveries.") (internal citations omit-

ted); *In re E.F. Hutton Southwest Properties II, Ltd.*, 103 B.R. 808, 811 (Bankr. N.D.Tex.1989) ("If an action under a particular theory belongs to the debtor under applicable state or federal law, then the action is 'property of the estate.' ").

In *Caplin*, the Supreme Court determined that a trustee in bankruptcy could not maintain an action against a third party that could not have been maintained by the debtor. The Supreme Court dismissed the suit because, among other reasons, it could find no authority in the Bankruptcy Act for the trustee to prosecute a cause of action which had not been an asset of the debtor and hence was not part of the bankruptcy estate. *Id.; see also* § 704(7) (Section 704 does not specifically authorize a trustee to prosecute claims of creditors of the estate, but does allow that the trustee shall, "unless the Court orders otherwise, *furnish such information concerning the estate ... as is requested by a party in interest[.]* ").

Additionally, in *Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir.1988), and *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 986 (11th Cir.1990) ("*Caplin* has been held to remain the law under the revised bankruptcy statutes.") (*citing Williams*, 859 F.2d at 666; *Ozark Equip. Co.*, 816 F.2d at 1228; *Koch Refining*, 831 F.2d at 1347–48 n. 11), the Ninth and Eleventh Circuits found the trustees in bankruptcy lacked standing to sue third parties who participated with the debtors in Ponzi schemes. Both circuit courts found it significant that when Congress rewrote the bankruptcy laws in 1978, it considered and rejected a provision which would have overruled *Caplin*. Footnote 9 of *Mixon v. Yancey (In re Ozark Restaurant Equip. Co., Inc.)*, 816 F.2d 1222 (8th Cir.), *cert. denied, Jacoway v. Anderson*, 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987) ("*Ozark Equip. Co.*"), notes this rejection as follows:

> A legislative commission initially recommended that the *Caplin* problem could be "partially solved by conditioning the

right of the trustee to enforce a claim on such actions being 'in the best interest of the estate.' " Report of the Committee on the Bankruptcy Laws of the United States, H.R.Doc. 93–137, 93d Cong., 1st Sess. Part I at 201 (1973) (footnoting a proposed section of the bill). The House apparently agreed that *Caplin* should be overruled and included subsection (c) in its original proposed version of Section 544. In explaining the import of subsection (c), the House Report stated:

> Subsection (c) is new. It overrules *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 [92 S.Ct. 1678, 32 L.Ed.2d 195] (1972), which precluded a [reorganization] trustee from enforcing a claim on behalf of debenture holders against an indenture trustee. The trustee is permitted to act as a class representative under this provision if the trustee has no other basis on which to recover on the claim involved; recovery will reduce the claim of a class of creditors or equity security holders and will not give rise to a corresponding but offsetting right of subrogation; and enforcement of the cause of action is in the best interest of the estate. Recovery in such an action is for the benefit of the class of creditors or equity security holders on whose rights the trustee has based the action. A judgment in the action binds all creditors or equity security holders that could have brought the action, and the court may stay the commencement or continuation of any other action on the same cause of action. All creditors that could have brought the action are given notice of the trustee's suit, and nothing precludes such creditors from retaining their own attorneys and joining the action in their own behalf. H.R.Rep. 95–595, 95th Cong., 1st Sess. 370–71 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6326, 6327.

*Ozark Equip. Co.*, 816 F.2d at 1228 n. 9. The fact that these provisions were con-

templated but never ratified makes the Congressional deference to *Caplin* clear.

However, some circuit court decisions have permitted a trustee to prosecute claims of creditors if the claims are held by all creditors rather than just some, distinguishing *Caplin* on this point. *See, e.g., Koch Refining v. Farmers Union Cent. Exch., Inc.,* 831 F.2d 1339, 1348–49 (7th Cir.1987) (trustee of bankrupt corporation was proper party to bring alter ego action against debtor's shareholders). However, subsequent circuit court decisions cast doubt on the continued vitality of *Koch. See Steinberg v. Buczynski,* 40 F.3d 890, 893 (7th Cir.1994) (stating that the *Koch* distinction between "general" and "personal" claims "is not an illuminating usage"); and *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 118–20 (2d Cir. 1991) (The circuit court relied on *Caplin* in denying trustee standing to assert dissipation claims of creditors and stated, "[i]t is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself.").

Finally, in the First Circuit, the Bankruptcy Court for the District of Massachusetts in *Rodolakis v. Shadduck (In re Shadduck),* 208 B.R. 1 (Bankr.D.Mass. 1997), held that a trustee in bankruptcy could not prosecute allowed and nondischargeable claims of creditors for the purpose of collecting the claims from retirement benefits which were not part of the bankruptcy estate. The court stated that the trustee's difficulty in this situation stemmed from the "lack of statutory authority to bring any creditor claim, whether the claim is held by some or all creditors." *Id.* at 5. Denying the Trustee the right to prosecute creditors' claims is consistent with dictum of the court of appeals for this circuit. In *Regan v. Vinick & Young (In re Rare Coin Galleries of Am., Inc.),* 862 F.2d 896 (1st Cir.1988) ("*In re Rare Coin* "), after affirming a trustee's ability to prosecute a debtor's prepetition

claims, the circuit court distinguished such causes of action from those belonging to creditors. The First Circuit stated that "[t]he trustee, however, has no power to assert any claim on behalf of the creditors when the cause of action belongs solely to them." *Id.* at 900 (*citing Caplin, Ozark Equip. Co.,* 816 F.2d at 1229–30 and 4 COLLIER ON BANKRUPTCY ¶ 541.10[8] (15th ed.rev.1998)).

### 2. *Standing and the Doctrine of In Pari Delicto.*

▇▇▇ The Trustee also lacks standing under the New Hampshire doctrine of *in pari delicto.* To have standing to assert a cause of action under New Hampshire law, a person must plead and prove that he suffered some injury to his legal rights. *See Roberts v. General Motors Corp.,* 138 N.H. 532, 535, 643 A.2d 956 (1994) ("In evaluating whether a party has standing to sue, we focus on whether the plaintiff suffered a legal injury against which the law was designed to protect."). Under the New Hampshire doctrine of *in pari delicto,* the Debtor, as an alleged co-conspirator, would not be able to maintain a cause of action for civil conspiracy and name either himself or a co-conspirator as a defendant.

▇▇▇ New Hampshire law forbids co-conspirators from obtaining judicial redress against one another: "The parties to the fraudulent transaction, being *in pari delicto,* are left by the law in the position in which they have placed themselves." *Belisle v. Belisle,* 88 N.H. 459, 461, 191 A. 273 (1937) (*citing Jones v. Bryant,* 13 N.H. 53 (1842); *Stevens v. Morse,* 47 N.H. 532 (1867); *Meredith v. Fullerton,* 83 N.H. 124, 134, 139 A. 359 (1927)). In *Witte v. Desmarais,* 136 N.H. 178, 614 A.2d 116 (1992), the Supreme Court of New Hampshire recognized the doctrine of *in pari delicto* and found it did *not* apply to the plaintiff in that case because the pleadings did *not* clearly establish his involvement in the crimes alleged. However, in the case at bar, taking the facts pleaded as true as

required by Federal Rule of Civil Procedure 12(b)(6), the Debtor is a co-conspirator. This fact is not only not undisputed, it is the pillar which supports the Plaintiff's complaint. *See also Hunt v. Hunt (In re Hunt),* 149 B.R. 96, 101 (Bankr. N.D.Tex.1992) (Holding that independent trustees lacked standing to pursue RICO claims, the Bankruptcy Court for the Northern District of Texas stated, "[a] co-conspirator in a fraudulent act, such as the RICO bankruptcy fraud alleged here, cannot also be a victim entitled to recover damages, for he cannot have relied on the truth of the fraudulent representations, and such reliance is an essential element in a case of fraud.") (internal quotations omitted) *(citing Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449, 454 (7th Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982)). *See Goldin v. Primavera Familienstiftung, TAG Assocs., Ltd. (In re Granite Partners),* 194 B.R. 318, 328 (Bankr.S.D.N.Y.1996) ("If *in pari delicto* applies, the trustee cannot sue the third parties for injury that the corporation suffered in connection with the fraudulent scheme.").

### E. The Trustee's "Looted Estate" Exception Theory.

On page 5 of the Plaintiff's Memorandum of Law in Objection to the Debtor's Motion to Dismiss, the Plaintiff argues that:

> [s]ound policy also supports the Trustee's position on standing. Permitting the Trustee to bring suit against one who injures the Estate generally promotes the orderly and equitable administration of the estate by preventing separate actions to the detriment of the estate as a whole. In this case, the injuries sustained by the Debtor's effort to secret [sic] assets are of a general nature to the estate, and to the creditors at large, rather than to one particular creditor. For this reason, the Trustee must have standing to pursue those assets and any claim the Estate may have against the wrongdoers.

(Plaintiff's Memorandum of Law in Objection to the Debtor's Motion to Dismiss at 5.) In support of his position, the Plaintiff cites two "receiver" cases and argues for similar treatment here. In *Federal Deposit Ins. Corp. v. O'Melveny & Myers,* 61 F.3d 17 (9th Cir.1995), the Ninth Circuit considered whether the Federal Deposit Insurance Corporation ("FDIC"), as a receiver of a federally insured savings and loan bank, had any rights or defenses not available to the entity it replaced. Referring to California case law, the Ninth Circuit found certain exceptions to the general rule that a receiver occupies no better position than that which was occupied by the person for whom he now acts. One exception was that "defenses based on a party's unclean hands or inequitable conduct do not generally apply against a receiver." *Id.* at 19 (citing *Camerer v. California Sav. & Commercial Bank,* 4 Cal.2d 159, 48 P.2d 39 (1935)). The circuit court further stated that "[a] receiver, like a bankruptcy trustee and unlike a normal successor in interest, does not voluntarily step into the shoes of the bank; it is thrust into those shoes." *Id.* at 19. Similar reasoning is found in *Scholes v. Lehmann,* 56 F.3d 750 (7th Cir.1995), where the Circuit Court for the Seventh Circuit held that the defense of *in pari delicto* could not be used against an Illinois receiver. The circuit court stated, "the defense of *in pari delicto* loses its sting when the person who was *in pari delicto* is eliminated." *Id.* at 754.

The Plaintiff argues that his position in this case is akin to a receiver, and that the defense of *in pari delicto* may not be asserted against him. The Court disagrees with this expanded reading of his enumerated powers in section 704, *see United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (plain meaning of statute controls), and notes that in *Hirsch v. Arthur Andersen & Co.,* 178 B.R. 40 (D.Conn.

1994), the District Court for the District of Connecticut dismissed the Chapter 11 trustee's claims against certain law firms and accountants that allegedly participated with the debtor in a Ponzi scheme. Similar to the issue before the Court on these motions to dismiss, the bulk of the complaint in *Hirsch* alleged a scheme to defraud creditors. The defendants argued that the trustee lacked standing because the claims, in actuality, belonged to the creditors; further, that any claims the debtors might assert were barred by virtue of their own participation in the fraudulent scheme. The bankruptcy court found that the trustee lacked standing, stating that if the facts of the complaint suggested that the claims actually belonged to the creditors, a blanket allegation of damage to the debtors (or the estate, in this instance) would not confer standing on the trustee. *Id.*

Finally, although the Trustee cites to *In re Rare Coin,* 862 F.2d 896 (1st Cir.1988), and *Gordon v. Basroon (In re Plaza Mortgage and Finance Corp.),* 187 B.R. 37 (Bankr.N.D.Ga.1995), to support the proposition that he has standing to bring the civil conspiracy claim, the court in those cases read the complaints involved to allege claims belonging to the debtor or an injury to the debtor—in other words, causes of action that are conceptually distinct from the injury to defrauded creditors, which is the basis of the Plaintiff's complaint in this case. In fact, to reiterate the Supreme Court in *Caplin* :

> The only support petitioner finds in the relevant statutes is in that portion of 11 U.S.C. § 587 which gives reorganization trustees the additional rights that a 'receiver in equity would have if appointed by a court of the United States for the property of the debtor.' Petitioner relies on *McCandless v. Furlaud,* 296 U.S. 140, 56 S.Ct. 41, 80 L.Ed. 121 (1935), to support the proposition that a receiver in equity may sue third parties on behalf of bondholders. But, the opinion of the Court by Mr. Justice Cardozo clearly

emphasizes that the receiver in that case was suing on behalf of the corporation, not third parties; he was simply stating the same claim that the corporation could have made had it brought suit prior to entering receivership. The debtor corporation makes no such claim in this case.

*Caplin,* 406 U.S. at 429, 92 S.Ct. 1678.

## CONCLUSION

Thus, the Court declines the Plaintiff's creative invitation that he be allowed to step into one, rather than both, of the Debtor's shoes to sue for perhaps the remaining Debtor's shoe and those of the Defendants. Because the Plaintiff's complaint does not "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery," *Gooley,* 851 F.2d at 515, Counts I and V are dismissed. The Court need not address the other well briefed and argued issues raised by either the Plaintiff or Defendants. The Court does note, however, that it will not address the statute of limitations argument since this issue can only be reached if the Plaintiff is granted rights greater than the Debtor had at the time of filing. *See generally McLean v. Gaudet,* 769 F.Supp. 30, 31 (D.N.H.1990) ("The statute of limitations issue cannot be decided fairly by reviewing a motion to dismiss."); *University System of New Hampshire v. United States Gypsum Co.,* 756 F.Supp. 640 (D.N.H.1991) ("This court therefore finds New Hampshire's discovery rule should apply to determine the point at which plaintiff's cause of action accrued.").

This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.